WORM v. COMMISSIONER OF INTERNAL REVENUE.

No. 4656.

Circuit Court of Appeals, Seventh Circuit.

Oct. 19, 1932.

Rehearing Denied Dec. 27, 1932.

Forney Johnston, of Birmingham, Ala. (Cabaniss & Johnston, of Birmingham, Ala., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Byron M. Coon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

WILKERSON, District Judge.

Section 213 of the Revenue Act of 1921, c. 136, 42 Stat. 227, 238, requires that for income tax purposes there shall be included "gains, profits, and income derived from * * * compensation for personal service * * * or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * or gains or profits and income derived from any source whatever."

That section also requires that the amount of such items, except as otherwise provided, shall be included in the gross income for the taxable year in which received by the taxpayer.

The Sixteenth Amendment, granting to the Congress power to tax incomes without apportionment, became effective February 25, 1913. If a part of the total gain received by the taxpayer accrued during the period before the effective date of the amendment, it must be deemed, for income tax purposes, as accretion to capital not taxable by the income tax acts enacted under the Sixteenth Amendment. Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906.

Section 202 (b) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 229, provides:

"The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be * * *

"(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value."

Treasury Regulations 62, article 90, provides:

"Any claim existing unconditionally on March 1, 1913, whether presently payable or not and held by a taxpayer prior to March 1, 1913, whether evidenced by writing or not, and all interest which had accrued thereon before that date, do not constitute taxable income, although actually recovered or received subsequent to such date. * * * *"

Petitioner claims that the agreement by which he was to receive one-fourth of the enhanced value of the stock in certain contingencies was a part of his capital on March 1, 1913, and that the value of this agreement on March 1, 1913, should be found and deducted in determining the amount received by him from the proceeds of the sale of the stock which is to be included as a part of his income for 1923.

In order to determine the gain derived by petitioner from the agreement which is to be treated as income, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed on March 1, 1913. The burden of proof to establish the amount of that capital value clearly is upon the petitioner. Burnet v. Houston, 283 U. S. 223, 227, 51 S. Ct. 413, 75 L. Ed. 991; Reinecke v. Spalding, 280 U. S. 227, 233, 50 S. Ct. 96, 74 L. Ed. 385; Botany Worsted Mills v. U. S., 278 U. S. 282, 289, 49 S. Ct. 129, 73 L. Ed. 379; U. S. v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347. To be sure, the taxing statutes must be construed with an eye to possible constitutional limitations so as to avoid doubts as to validity (Lucas v. Alexander, supra); but a construction which relieves the taxpayer of the burden of showing facts from which, under the rules of proof, the capital value existing on March 1, 1913, may be ascertained, is not permissible. Burnet v. Houston, supra, page 228 of 283 U. S., 51 S. Ct. 413.

It is clear that by the agreement of 1904, petitioner did not become the owner of any portion of the shares of stock. His interest was limited to participation in the enhanced value of the stock. Petitioner had no interest in any dividends paid on the stock. If the stock was sold below par, he received nothing.

That which it is claimed should have been valued as a capital asset consisted of the promise of the German company to pay one-fourth of the value of the stock of the American company above par in certain contingencies, as follows:

(1) If the German company should sell the stock, petitioner would receive one-fourth of the amount received for the stock in excess of $100 per share.

(2) If petitioner should resign as president and manager of the American company, there would be an accounting, and the German company would pay to petitioner one-fourth of the value of the stock above par.

(3) If petitioner should die, there would be an accounting, and the German company would pay to petitioner's estate one-fourth of the value of the stock above par.

The payment promised if the German company should elect to sell the stock was wholly dependent upon an act beyond the control of petitioner and which it was impossible to foresee.

The payment promised to be made if petitioner should resign his position with the American company was of course within the power of petitioner to control. To receive the payment, however, petitioner was obliged to give up his position with the American company, and there is no basis in the record for valuing the promise, when the uncertain and speculative element of the resignation required as a condition of the obligation to pay is taken into consideration.

The promise to pay to petitioner's estate in the event of his death approaches more nearly the field of reasonable certainty. But here petitioner made no attempt to make a showing of the value of the promise on March 1, 1913, on the assumption that the value of the stock would remain constant until petitioner should die. If the value of the promise could have been ascertained by resort to the mortality tables and to methods employed in life insurance and annuity computations, petitioner did not elect to follow that course. He bases his claim upon the contention that the value on March 1, 1913, of the promise of the future payments is one-fourth of the value of the stock on that date above par. That contention, as we have pointed out already, cannot be sustained.

█ This case, in our opinion, lacks those elements of certainty upon which to base a valuation as of March 1, 1913, which are to be found in the cases upon which petitioner relies. Compare Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906; Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087; Eldredge v. United States (C. C. A.) 31 F.(2d) 924; Kentucky Tobacco Products Co. v. Lucas (D. C.) 5 F.(2d) 723; Platt v. Bowers (D. C.) 13 F.

(2d) 951; Kosmerl v. Commissioner (C. C. A.) 25 F.(2d) 87; Ruth Iron Co. v. Commissioner (C. C. A.) 26 F.(2d) 30; Saunders v. Commissioner (C. C. A.) 29 F.(2d) 834; Portage Silica Co. v. Commissioner (C. C. A.) 49 F.(2d) 985; Commissioner v. Stephens-Adamson Mfg. Co. (C. C. A.) 51 F.(2d) 681.

The case is more nearly analogous as to contingency in the promised payments to Workman v. Commissioner (C. C. A.) 41 F. (2d) 139, and Woods v. Lewellyn (C. C. A.) 252 F. 106. The observation in Burnet v. Houston, 283 U. S. 223, 228, 51 S. Ct. 413, 415, 75 L. Ed. 991, is pertinent: "The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof." See, also, Burnet v. Logan, 283 U. S. 404, 413, 51 S. Ct. 550, 75 L. Ed. 1143.

The order of the Board of Tax Appeals is affirmed.