**WORM v. HARRISON.**

**No. 6490.**

Circuit Court of Appeals, Seventh Circuit.

Aug. 4, 1938.

Rehearing Denied Oct. 12, 1938.

Gerald G. Barry, of Chicago, Ill., for appellant.

James W. Morris, Asst. Atty. Gen., Ellis N. Slack, Sewall Key, J. Louis Monarch, and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Michael L. Igoe, U. S. Atty., and D. L. Bazelon, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal is from a judgment of the District Court in a suit brought by appellant's decedent to recover income taxes paid by him for the year 1923. He subsequently died and his administratrix was substituted as plaintiff.

The substantive facts out of which this action arose are set forth in Worm v. Commissioner, 7 Cir., 61 F.2d 868. That suit was instituted by the decedent and involved the same income taxes as are here in question. This court affirmed the order of the Board of Tax Appeals, and certiorari was denied by the Supreme Court. 289 U.S. 729, 53 S.Ct. 526, 77 L.Ed. 1478.

Briefly stated the pertinent facts upon which those proceedings were based are as follows: As an inducement to decedent to assume the direction and management of an American corporation, certain individuals dominating a German corporation by which he had formerly been employed, agreed to pay him 25 per cent of the enhanced value above par of the stock of the American corporation, owned by the German corporation, in the event of a sale thereof, or upon an accounting to be made in case of his resignation, or to his estate in case of his death. The American company was in financial distress when the agreement was made in 1904, and its stock was selling considerably below its par value of $100 per share. By March 1, 1913, the stock had reached a minimum valuation of $200 per share.

It was sold in 1919 by the Alien Property Custodian at $286 per share, and in 1923 appellant received $93,000 as his net share under the agreement.

In his 1923 income tax return Worm reported from this transaction the sum of $30,827.96 as taxable income, claiming the difference as the March 1, 1913, deductible value of his interest in the shares of stock; and on this $30,827.96 he computed the tax at ordinary normal rates.

An audit of this return was made by the Department at Chicago, in which the March 1, 1913, valuation of his interest in the shares of stock was lowered, resulting in an additional tax of $1,603.03. A further review by the Commissioner resulted in the assessment of a deficiency tax of $18,075.92 against Worm, because the Commissioner disallowed any deduction for the March 1, 1913, value of Worm's interest in the shares of stock. On April 6, 1928, the Commissioner, under section 283(a) of the 1926 Revenue Act, 44 Stat. 63, notified decedent of this deficiency and the findings upon which it was determined. Thereupon decedent appealed from that decision to the Board of Tax Appeals which affirmed the deficiency, rendering its decision on February 3, 1931. Decedent petitioned for review of that decision by this court. In affirming the decision of the Board, we held that decedent did not become the owner of any portion of the shares; that he had no interest in any dividends thereon; and that his interest was limited to a mere participation in the enhanced value of the stock under three separate contingencies. With respect to these we said:

"The payment promised if the German company should elect to sell the stock was wholly dependent upon an act beyond the control of petitioner and which it was impossible to foresee.

"The payment promised to be made if petitioner should resign his position with the American company was of course within the power of petitioner to control. To receive the payment, however, petitioner was obliged to give up his position with the American company, and there is no basis in the record for valuing the promise, when the uncertain and speculative element of the resignation required as a condition of the obligation to pay is taken into consideration.

"The promise to pay to petitioner's estate in the event of his death approaches more nearly the field of reasonable certainty. But here petitioner made no attempt to make a showing of the value of the promise on March 1, 1913, on the assumption that the value of the stock would remain constant until petitioner should die. If the value of the promise could have been ascertained by resort to the mortality tables and to methods employed in life insurance and annuity computations, petitioner did not elect to follow that course. He bases his claim upon the contention that the value on March 1, 1913, of the promise of the future payments is one-fourth of the value of the stock on that date above par. That contention, as we have pointed out already, cannot be sustained."

On March 27, 1933, the Supreme Court denied certiorari. Worm v. Com'r; 289 U.S. 729, 53 S.Ct. 526, 77 L.Ed. 1478. On November 18, 1933, decedent filed his petition with the Commissioner, asking that his tax for 1923 be computed under section 206(a) and (b) of the Revenue Act of 1921, 42 Stat. 232.[1] On October 8, 1934, he paid to the Collector $8,989.73, an amount $100 in excess of the tax which would be due if computed pursuant to his petition last mentioned. On October 9, 1934, he filed a claim for this excess of

---

[1] Revenue Act 1921. "Sec. 206. (a) That for the purpose of this title:

"(1) The term 'capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921; * * *

"(b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 210 and 211 of this title, a tax determined as follows:

"A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain; but if the taxpayer elects to be taxed under this section the total tax shall in no such case be less than 12½ per centum of the total net income. The total tax thus determined shall be computed, collected and paid in the same manner, at the same time and subject to the same provisions of law, including penalties, as other taxes under this title."

$100, and it was rejected on May 25, 1935, on the ground that the judgment of the Board in the sum of $18,075.92 had become final, and the Commissioner was without authority to reopen the matter. Decedent then paid the balance of his entire tax so assessed with interest, aggregating $31,475.43.

On October 15, 1935, decedent instituted this action in the District Court to recover the amount paid in excess of what his tax would have been if computed under section 206(b) of the Act of 1921, 42 Stat. 232. He here treated his contract of 1904 as his capital asset rather than his interest in the shares of stock, as was done in the former proceeding. He contended that he was entitled to maintain the instant action, notwithstanding everything which occurred prior to October 9, 1934, the date when he exercised his option in connection with filing his refund claim. His theory was that his present cause of action is new and different from the first in that it is based on his exercise of the option contemplated by section 206(b), as well as upon the difference in character of the capital asset involved. This new and different subject matter he urges had no legal existence until after final judgment in the prior suit, because at that time he had not exercised his option.

The Commissioner filed a motion to dismiss the complaint on the grounds that the provisions of the applicable Revenue Act prohibited the institution of the present suit after the Board's final determination as to the deficiency for that year; and that the former proceedings were res adjudicata not only as to all issues raised in that suit, but as to all questions relative to appellant's income tax liability for 1923, which might have been raised in those proceedings. The court sustained the motion to dismiss and awarded costs to appellee, and from that judgment this appeal is prosecuted.

We think the court correctly refused to entertain jurisdiction of appellant's petition because of the Board's prior final determination of his tax liability for the same period. His petition for a computation of his tax under section 206(b) was filed with the Board long after its final decision in his appeal to that body, and long after that decision had been affirmed by this court, and certiorari had been denied. It was also filed long after the enactment of the Revenue Act of 1926. Section 284(d) of that act, 44 Stat. 66, provides that if the Commissioner has mailed to the taxpayer a notice of deficiency under subdivision (a) of section 274, 44 Stat. 55, and if the taxpayer after the enactment of that act files a petition with the Board within the time prescribed in such subdivision, no credit or refund in respect to the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made, and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court. This section contains certain exceptions, but they are not applicable to the facts presented by this record.

Section 1111 of the same act, 44 Stat 115, provides that "except as otherwise provided in sections 284 and 319" of that act the Commissioner, subject to treasury regulations, is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected. An amendment to this section in 1928, 26 U.S.C.A. § 1670(a) (1), merely enlarged the exception by striking the words "in sections 284 and 319 of the Revenue Act of 1926," and substituting therefor the words "by law in the case of income, war-profits, excess-profits, estate, and gift taxes." 45 Stat. Ch. 852, pp. 791, 878. Under these sections we think it is clear that appellant was barred from instituting this action. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Bankers' Reserve Life Co. v. United States, Ct. Cl., 44 F.2d 1000; American Woolen Co. v. White, 1 Cir., 56 F.2d 716; Guettel v. United States, 8 Cir., 95 F.2d 229.

Furthermore, we are convinced that the instant action was in no sense new or different from the proceedings formerly before this court. The end sought in each was precisely the same, that is to say, the determination of the amount of decedent's income tax for the year 1923. The difference between the two actions was merely one of methods or remedies to accomplish the same end, and this is not a sufficient basis for differentiation. True, decedent was given

option under section 206(b) to elect his method of computation, and the time for doing this was not expressly limited, but, as in all like cases, when one is called upon by the exigencies of the situation to exercise his option he must do so, or he will not be heard 'to complain. Originally he and the Commissioner were engaged in determining the amount of his tax for 1923. Unless he elected to accept the benefits of section 206(b), the Commissioner was bound to compute the tax as imposed by sections 210 and 211, 42 Stat. 233. This he did, and the amount assessed was litigated to a finality. It is too late now to permit him to elect to accept the benefits of section 206(b). We think the proceedings in the former action are res adjudicata as to all issues presented here. See Guettel v. United States, supra.

Judgment affirmed.